JOHN J. JORDAN, ESQ. (State Bar No. 175678)
601 Montgomery Street, Suite 850
San Francisco, CA 94111
Tel: (415) 391-4814
Fax: (415) 391-4309
Email:jjordanesq@aol.com

Counsel for Defendant
EDGAR FLORES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>EDGAR FLORES,<br><br>　　　　　Defendant. | No. CR 19-0271-002-HSG<br><br>**DEFENDANT FLORES' SENTENCING MEMORANDUM**<br><br>Date:　August 26, 2020<br>Time:　3:00 p.m.<br>Hon. HAYWOOD S. GILLIAM, Jr. |

**INTRODUCTION**

The defendant, Edgar Flores, through counsel of record, John J. Jordan, hereby files this sentencing memorandum. Mr. Flores will appear for sentencing directly after pleading guilty "open" to all three counts in the pending indictment, charging the identical offense (committed during three different incidents) of Possession with Intent to Distribute and Distribution of 50 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(l)(A)(viii).

The defendant, who qualifies for the "safety valve" adjustment, has no objections to the final Pre-Sentence Report ("PSR"), but requests a lower sentence of 24 months than the 51 months recommended by Probation. The Court is asked to consider imposing the 24 months as home detention, due to the COVID-19 pandemic.

Flores Sent. Mem.                                     1

## PROCEDURAL AND FACTUAL BACKGROUND OF OFFENSE

This case arises from Flores helping his brother (co-defendant) Fausto Montes, in the brother's three sales of methamphetamine to a government confidential source.  PSR ¶ 15.  Mr. Montes negotiated with the confidential source, arranged the three sales and the meeting places, and then went to the meeting place with Flores.  PSR ¶¶ 9-14.  Flores went with his brother, and never negotiated with the source, but did assist his brother.  As the government explained to the probation officer, "Mr. Flores was a minor participant within the drug trafficking activities. The defendant did not initiate any sales and only acted as his siblings assistant."  PSR ¶ 15.   The total weight of the pure (and actual) methamphetamine was 1,271 grams.  PSR  ¶ 14.

On June 18, 2019, a three count indictment was filed, charging the defendant and co-defendants Fausto and Aldo Alvarez (count three only) with Possession with Intent to Distribute and Distribution of 50 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(l)(A)(viii).  Dkt. Entry 18.

On March 16, 2020, the defendant and his brother Montes anticipated entering open guilty pleas to the indictment, but under the new COVID-19 protocols, the case was set for plea and sentencing and a pre-plea PSR was ordered.  PSR ¶ 2.

The defendant has received and reviewed the final PSR prepared by the U.S. Probation Department.  The PSR calculates the final offense level as 27, with a criminal history I, resulting in a guideline range of 70-87 months.  PSR ¶¶ 29, 33, 60.  The PSR also concluded that the defendant meets the "safety valve" provisions of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. PSR ¶ 59.  If the defendant pleads guilty, then the PSR calculates an additional 3 point reduction for acceptance of responsibility.  PSR ¶ 28, footnote 2.

The defendant has no objections to the factual statements contained in the PSR, nor to the guideline calculations.

The probation officer recommends a 51 month sentence.  The defendant recommends a sentence of 24 months.

# ARGUMENT

## 1. Introduction

The defendant asks this Court to impose a sentence of 24 months incarceration, followed by 3 years supervised release, no fine, and $300 in penalty assessments. A variance is sought, primarily based on Mr. Flores limited behavior in this case and his personal characteristics. In addition, in light of the COVID-19 pandemic, the defendant asks the Court to consider imposing the 24 months incarceration in the form of strict home detention, as a condition of the defendant's supervised release.

## 2. Applicable Law

In this post-*Booker* sentencing, a district court is "not mandated to sentence within an applicable Guideline range because the Sentencing Guidelines are advisory--not mandatory." *United States v. Mix,* 457 F.3d 906, 911 (9th Cir. 2006), citing *United States v. Cantrell,* 433 F.3d 1269, 1279-81 (9th Cir. 2006) and *United States v. Booker,* 543 U.S. 220, 259-60 (2005). District courts, however "'must consult [the] Guidelines and take them into account when sentencing,' even though they now have the discretion to impose non-Guidelines sentences." *United States v. Cantrell,* 433 F.3d at 1279, quoting *Booker,* 543 U.S. at 264.

This Court should begin the sentencing proceeding by correctly calculating the applicable Sentencing Guideline range. See *Gall v. United States,* 552 U.S. 38, 49 (2007) (stating that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guideline range."). "In addition, a district court must apply the factors enumerated in 18 U.S.C. § 3553(a) in its sentencing decision." *United States v. Mix, supra,* citing *United States v. Cantrell,* 433 F.3d at 1279-80; see also *United States v. Ameline*, 409 F.3d 1073, 1085-86 (9th Cir. 2005) (en banc).

Thus, in addition to the advisory Guideline range, the district court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" as well as the need for the sentence to reflect the seriousness of the offense, promote respect for the

law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training and medical care. 18 U.S.C. § 3553(a)(1)-(2).

The court must also address the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(6)-(7).

**3.     The Defendant's Request for a Variant 24 Month Sentence on Home Detention**

Mr. Flores asks this Court to impose a sentence of 24 months. There is strong support in this case for the Court to follow this recommendation, after a review of the relevant 18 U.S.C. § 3553(a) sentencing factors. In addition, because of the impact of the COVID-19 pandemic, Flores asks the Court to consider structuring the incarceration as home detention.

Sentencing anyone to prison now comes with the increased risk that a defendant, even if otherwise healthy, may become sick, or very sick, or die. The BOP website discloses that as of August 13, 2020, 11,135 federal inmates have tested positive at one point for COVID-19 and there have been 111 federal inmate deaths attributed to COVID-19. https://www.bop.gov/coronavirus/ (August 13, 2020).

The Federal Government itself has recognized the risks posed by the COVID-19 pandemic. In his memorandum of March 26, 2020, Attorney General Barr urged home confinement for some inmates at federal prisons. Even though these prisoners had been convicted of federal crimes, Attorney General Barr recognized that the COVID-19 pandemic necessitated a reconsideration of who should remain incarcerated during this crisis. Since the release of the Attorney General's memo, the BOP has placed 7,444 inmates on home confinement. https://www.bop.gov/coronavirus/ (July 23, 2020).

The government may argue that Flores can be placed at a BOP facility where there are few or no cases of COVID-19. But, the recent experience at the California prison at San Quentin, illustrates how quickly things can change. The Los Angeles Times reported on June 30, 2020, that: "Unlike other prisons in California, San Quentin had escaped any coronavirus

outbreak until early June. But 121 inmates were moved there from the Chino prison on May 30. Inmates in Chino who did not test positive and are medically vulnerable were transferred to other prisons, including San Quentin and Corcoran. The transfers ignited outbreaks at both prisons, with a federal judge calling the moves a significant failure." 2020https://www.latimes.com/california/story/2020-06-30/. www.sfchronicle.com/bayarea/ article/Two-more- San-Quentin-prisoners-die-from-COVID-19-15403309.php (July 13, 2020).

It is true that Mr. Flores is not elderly and is in relatively good health. PSR ¶ 47. But, that does not guarantee that he would not become sick or suffer serious complications. Because of the risk all inmates, no matter their age or physical condition, now face if imprisoned, the defendant asks the court to consider home detention.

**4.      The Section 3582 Factors Support the Sentence Request**

**a.      The nature and circumstances of the offense.**

The crimes to which Mr. Flores pled guilty are certainly serious offenses. Mr. Flores accepts responsibility for his participation in these offenses and agrees that punishment is appropriate.

However, there are also unique mitigating circumstances in this case relating to the nature and circumstances of the offense. Mr. Flores' activity was limited to helping his brother Fausto Montes. While he was not coerced in any way to do this, his role was still as a minor participant who was motivated by a concern about his brother's safety.

Moreover, the defendant faces a high guideline sentence because of the purity of the methamphetamine that was sold. While the guidelines admittedly take purity into account for methamphetamine, a number of district courts have rejected the 10:1 mixture-to-actual methamphetamine ratio based on policy disagreements with the Guidelines. In *United States v. Bean*, the district court judge joined those cases and declared "a categorical policy disagreement with the methamphetamine guidelines [because] (1) there appears to be no empirical basis for the Sentencing Commission's harsher treatment of offenses involving higher purity

methamphetamine; (2) methamphetamine purity is no longer an accurate indicator of a defendant's role in a drug-trafficking conspiracy; and (3) the methamphetamine guidelines create unwarranted sentencing disparities between methamphetamine offenses and offenses involving other major drugs." *United States v. Bean*, 371 F. Supp. 3d 46, 51 (D. N.H. 2019) (citing cases); see also *United States v. Nawanna,* 321 F. Supp. 3d 943, 955 (N.D. Iowa 2018) (rejecting purity-based disparity and recalculating the base offense level by treating all methamphetamine attributable to the defendant as a methamphetamine mixture).

This is a further reason justifying a variance in this case. Mr. Flores certainly had no control over the purity of the drugs that his brother arranged to sell, nor did he have any input into the quantity of the drugs sold. In this situation, the guidelines score is being driven by factors that really have little or nothing to do with Montes' individual culpability. Accordingly, this Court may conclude that a downward variance is justified.

In addition, Mr. Flores forthrightly dealt with this issue by pleading guilty early on, not waiting to file any motion. He expressed his guilt fully at his plea and to the probation officer during the pre-sentence interview. Then, he also fully admitted his guilt during the safety valve proffer session. His ready admission of guilt also supports a variance.

**b.      The history and characteristics of the defendant**.

Mr. Flores was born and grew up in a low income family in the United States, then moved to Mexico at the age of seven when his father was deported. PSR ¶¶ 38, 39. His father suffered from alcoholism throughout the defendant's upbringing. PSR ¶ 41.

Mr. Flores moved back to the United States at age 21, and has been working steadily since then, sending back money to support his family in Mexico. PSR ¶ 42.

Mr. Flores has struggled with drug addiction (cocaine and methamphetamine) and alcohol abuse. PSR ¶ 49. He admittedly had difficulties during his time on pre-trial release, testing positive for drug use. PSR ¶¶ 50, 51, Sentencing Recommendation, page 2. But, as the PSR confirms, Mr. Flores agreed to residential drug treatment, successfully completed a 90 day

program at Pathway in San Jose, and then continued on release. PSR ¶¶ 51, 52, Sent. Rec. p. 2. Once released from the residential program, he resumed working. PSR ¶ 54.

Unfortunately, just prior to this sentencing date, Mr. Flores again had difficulties with his drug addiction, pointing to the need for continued drug treatment, whatever sentence the Court imposes.

**c.  The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public.**

The defendant acknowledges that this offense is a serious matter, and is certainly aware of the consequences of his actions. As is often the case, Mr. Flores was shocked when he learned how serious this violation was in federal court, but Mr. Flores has always been very forthright in discussing his mistakes.

Moreover, the 24 months sentence sought by the defendant would provide adequate punishment in this case and protect the public, particularly as the defendant appears to have never been sentenced to jail before.

**d.  Need to Avoid Disparity**

The defendant is scheduled to be sentenced on the same day as co-defendant and brother Fausto Montes. The defendant submits that the recommended sentence is in line with both the severity of the defendant's own actions and with the sentences faced by his co-defendants.

**4.  Request for Self-Surrender**

The defendant also requests that the Court permit him to self-surrender, at his own expense, to the designated Federal prison facility, in light of his medical condition. The defendant submits that the ongoing COVID-19 pandemic is an exceptional circumstance under 18 U.S.C. § 3145(c), permitting this court to continue the defendant on bail until a self-surrender date. See *United States v. Garcia,* 340 F.3d 1013, 1014, fn. 1 (9th Cir. 2003) ("Although the "exceptional reasons" provision appears in a subsection that otherwise concerns actions taken by appellate courts, we agree with the other circuits to have addressed the issue that the district court

has authority to determine whether there are exceptional reasons (further citations omitted)." The Ninth Circuit gives district courts broad discretion in determining whether exceptional circumstances exist under 18 U.S.C. § 3145(c). *United States v. Garcia*, 340 F.3d at 1018.

Pursuant to 18 U.S.C. §§ 3142(f)(1)(A)(B) and 3143, a person who has been found guilty of a crime of violence, or a drug trafficking crime for which a maximum term of imprisonment of ten years or more is prescribed, must be detained pending the execution of their sentence. "Section 3143 provides specific grounds upon which a court may release a person from detention pending their sentence or their appeal." *United States v. Lancaster*, 2017 U.S. Dist. LEXIS 121053, CASE NO. 16-cr-00313-YGR-1 (N.D. CA Aug. 1, 2017) (attached hereto).

In *Lancaster,* Judge Flores-Rogers noted that 18 U.S.C. section 3145(c) creates a further exception to the mandatory detention provisions of Section 3143. *Id*. "Section 3145(c) provides thus: 'A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.'" *Lancaster,* citing 18 U.S.C. § 3145(c); also citing *United States v. Garcia*, 340 F.3d 1013, 1015 n.2 (9th Cir. 2013).

In *Garcia*, the Ninth Circuit addressed the meaning of the term "exceptional reasons" in section 3145. The Court pointed out that under the Mandatory Detention Act of 1990, however, violent offenders, as well as those convicted of drug offenses with a maximum sentence of at least ten years in prison and those convicted of any offense with a maximum sentence of life imprisonment or death, were not eligible for release simply because they meet the requirements of 18 U.S.C. § 3143(b)(2). *Garcia*, 340 F.3d at 1015. "As to such offenders, Congress has imposed an additional condition: Persons subject to the 1990 Act are not eligible for release unless "it is clearly shown that there are exceptional reasons why [their] detention would not be appropriate."" 18 U.S.C. § 3145(c).

The court in *Garcia*, acknowledging a lack of prior Ninth Circuit guidance on the issue

and a sparse legislative history, reviewed various other court decisions addressing and applying the "exceptional reasons" provision. "As these cases indicate, a wide range of factors may bear upon the analysis. By adopting the term "exceptional reasons," and nothing more, Congress placed broad discretion in the district court to consider all the particular circumstances of the case before it and draw upon its broad 'experience with the mainsprings of human conduct.'"*United States v. Garcia*, 340 F.3d at 1018, quoting *Mozes v. Mozes*, 239 F.3d 1067, 1073 (9th Cir. 2001) (internal quotation marks omitted).

Here, the COVID-19 pandemic has created an exceptional circumstance where immediate incarceration would impose exceptional risks on Flores involving his potential physical well-being.

## CONCLUSION

The defendant asks the Court to sentence him to 24 months incarceration, followed by three years of supervised release, and asks the Court to consider structuring the sentence as time-served, with 24 months home detention as a condition of supervised release.

Should the Court impose straight incarceration, then the defendant asks to be recommended for the Residential Drug Program (RDAP), in light of his substance abuse problems, and asks that he be permitted to self-surrender, at his own expense, to the designated BOP facility.

DATED: August 18, 2020.                    Respectfully submitted,

*/s/ John J. Jordan*
JOHN J. JORDAN
Attorney for Defendant
EDGAR FLORES